IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARSHALL PETTY ) | |
|        Plaintiff, ) | |
| ) | |
| vs. ) | |
| KEMP, ) | CIVIL No. 15-cv-0111-MJR-SCW |
| PATTERSON, ) | |
| WELSH, ) | |
| REID, and ) | |
| STEPHEN DUNCAN ) | |
| ) | |
|        Defendant. ) | |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### Introduction and Procedural Background

Pro se Plaintiff Marshall Petty, currently incarcerated at Dixon Correctional Center, filed this case on February 3, 2015 alleging that his constitutional rights were violated when staff at Lawrence Correctional Center did not adequately respond to a dizzy spell he suffered. (Doc. 1). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether Plaintiff exhausted his administrative remedies before filing suit. For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** the Motion. (Doc. 42).

1

Defendants Duncan, Kemp, Patterson, Reid, and Welsh filed their Motion for Summary Judgment on July 27, 2015. (Doc. 42). On August 6, 2015, Plaintiff filed a "Motion to Respond to Defendants." (Doc. 45). Although titled as a Motion, the document addresses some of the substantive issues raised in Defendants' Motion. On August 27, 2015, Plaintiff also filed a Response in Opposition to the Motion for Summary Judgment. (Doc. 47). While it is improper to file two responses, the undersigned considered both responses because Plaintiff proceeds pro-se. Plaintiff further filed a Motion for Status regarding the Motion for Summary Judgment on October 30, 2015. (Doc. 48). The undersigned held a hearing on this matter on December 22, 2015. (Doc. 60). Plaintiff appeared for himself. Matthew Tamul appeared for Defendants. Plaintiff testified on his own behalf.

## LEGAL STANDARDS

1. **Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).** The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317 323 (1986).** In determining whether a genuine issue of material fact exists, the Court must view the

record in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986).**

When a motion for summary judgment is made with respect to *Pavey*, the first step in the sequence, as set out by Judge Posner, is for the judge to hold a hearing on the issue of exhaustion. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** A case can only move onto the merits after such exhaustion issues have been decided. *Id.* When "factual issues relating to the defense of failure to exhaust administrative remedies," are up for consideration, these will be decided by a judge. *Id.* **at 740-41.**

2. PLRA's Exhaustion Requirement

Suits brought by prisoners are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997e. PLRA requires a prisoner to first exhaust all administrative remedies available before bringing an action concerning prison conditions. **42 U.S.C. § 1997e(a).** The exhaustion requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. *Jones v. Bock*, **549 U.S. 199, 218 (2007).** Unexhausted claims may not be brought to court. *Jones*, **549 U.S. at 211 (citing** *Porter v. Nussell*, **534 U.S. 516, 524 (2002)).**

The Seventh Circuit requires strict compliance in regards to exhaustion. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* **at 1025.** If the prisoner fails to

3

comply with the established procedures, including time restraints, the court will not consider the grievance. *Pavey*, **663 F.3d at 903.**

The purpose of the exhaustion requirement is two-fold. ***McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).** First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." ***Porter*, 534 U.S. at 524;** *see* **Booth v. Churner, 532 U.S. 731, 737 (2001) (noting that PLRA's requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait until he has completed the established process and may not file in anticipation that administrative remedies will soon be exhausted. ***Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C § 1997e(a));** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted while the suit is pending. *Perez*, **182 F.3d at 535.**

3. **Exhaustion Requirement under Illinois Law**

Inmates confined in the Illinois Department of Corrections must adhere to the Department's Grievance Procedures for Offenders in order to properly exhaust claims; anything less is a failure to exhaust. **20 Ill. Admin. Code § 504.810.** The prisoner must first speak with their Counselor about the issues they raise, and if the dispute is not resolved, the grievance must be filed within sixty days of the events or occurrence with the Grievance Officer. **20 Ill. Admin. Code § 504.810(a).** The grievance must:

> Contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** The grievance officer must then review the grievance and report findings and recommendations to the Chief Administrative Officer ("Warden"). **20 Ill. Adm. Code § 504.830(d)**. The prisoner then has the opportunity to review the Warden's response, and if he is unsatisfied, he may appeal to the Director through the Administrative Review Board ("ARB") within 30 days of the Warden's response. **20 Ill. Adm. Code § 504.830(d)**; **20 Ill. Adm. Code § 504.850**. The ARB is then required to provide a written report to the Director of its recommendation on the grievance and the Director "shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.850(e), (f).**

Alternatively, a prisoner "may request a grievance by handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer." **20 Ill. Adm. Code § 504.840**. The CAO must make a determination whether the grievance shall be handled on an emergency basis. **20 Ill. Adm. Code § 504.840**. If so, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." **20 Ill. Adm. Code § 504.840**. Once the CAO has informed the grieving inmate of its decision, the inmate may then appeal that decision

to the Administrative Review Board ("ARB") on an expedited basis.  **20 Ill. Admin. Code § 504.850(g)**.  A final decision of the ARB will exhaust the grievance requirement.

### FINDINGS OF FACT

The threshold order found that Plaintiff's Complaint was "barely understandable" with "sparse" factual content.  (Doc. 8, p. 3).  After reviewing the Complaint and the attached exhibits, the Court discerned one claim: that on January 19, 2015, Plaintiff fell and hit his head and possibly his back, and even though his cell mate hit the panic button, help was slow in arriving.  (Doc. 8, p. 3-4).  No other claims are present in this case, and Plaintiff has not been granted leave to file an amended complaint.

Plaintiff filed one grievance dated January 19, 2015, which he filed as an emergency to the Warden.  (Doc. 43-1, p. 1).  The grievance addresses the relevant conduct, specifically asks the warden to "give me a response, not just your name." (Doc. 43-1, p. 2).  Nevertheless, the Warden denied the grievance as an emergency on January 26, 2015 and returned it to Plaintiff without further response.  (Doc. 43-1, p. 1). The grievance has no other marks on it to indicate that it was received by the counselor or the ARB.  (Doc. 43-1, p. 1).  Sarah Johnson of the ARB also submitted an affidavit stating that the ARB had not received any relevant grievances.  (Doc. 43-3, p. 4).

Plaintiff's responses were difficult to understand.  In one response, (Doc. 45) Plaintiff alleged that the he did not get a response to his grievance and the process was unavailable to him, while in the other response, Plaintiff conceded that he got a response from the Warden.  (Doc. 47). At the hearing, Plaintiff testified that he had

another dizzy spell four days prior to the incident described here. While not part of the Complaint, Plaintiff stated that he attempted to file a grievance to his counselor regarding that dizzy spell and the counselor did not respond and told Plaintiff he did not receive the grievance. Based on this experience, Plaintiff decided that the grievance process was unavailable to him.[1] So when the second dizzy spell happened, Plaintiff filed an emergency grievance to the warden. Plaintiff contends that the warden was obligated to conduct an investigation into his claims, and that he did not do so here. Plaintiff concedes that he received the January 19, 2015 grievance back from the warden. However, disappointed in the lack of response or investigation, Plaintiff decided that it would be pointless to continue the grievance process. He did not send the emergency grievance to the ARB.

## ANALYSIS

Plaintiff conceded at the hearing that he did not follow the three-step grievance process. He argues that he did not have to because it was previously unavailable to him in response to an incident that is not part of the complaint. Plaintiff is mistaken; the availability of the grievance process is a fact-specific inquiry and there is no case law suggesting that failure to respond to one grievance makes the process unavailable as to a separate incident. *See Kaba v. Stepp*, **458 F.3d 678, 687 (7th Cir. 2006) ("[A] more discriminating analysis is necessary . . . Sometimes grievances are clearly available, sometimes they are not; sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics.")**. And the evidence is

---

[1] Plaintiff's decision to wait only four days for a response would also be presumptively unreasonable if this issue was squarely before the Court.

clear that the grievance process was available to Plaintiff as to the January 19th incident. Plaintiff concedes that the warden responded to his grievance and the grievance was returned to him. In fact, he included a copy of the grievance with the Complaint. (Doc. 1). Plaintiff then stopped participating in the grievance process by not appealing the grievance or submitting it to his counselor. Plaintiff has not exhausted his administrative remedies. The undersigned therefore **RECOMMENDS** that the Court **GRANT** the Motion for Summary Judgment. (Doc. 42).

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 42) be **GRANTED**. If this Report is adopted, then Plaintiff's claim will be dismissed without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). <u>Objections to this Report and Recommendation must be filed on or before January 8, 2016</u>. *See* FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).

      **IT IS SO ORDERED**.

      DATED: December 22, 2015                                    s/     *Stephen C. Williams*

**STEPHEN C. WILLIAMS**
United States Magistrate Judge